ABELSON HERRON HALPERN LLP
   Marc D. Halpern (State Bar No. 216426)
   Vincent H. Herron (State Bar No. 172290)
   Douglas J. Brown (State Bar No. 248673)
600 West Broadway, Suite 1060
San Diego, California  92101
Telephone: (619) 618-7000
Facsimile:  (619) 618-7001
mhalpern@abelsonherron.com
vherron@abelsonherron.com
dbrown@abelsonherron.com

Attorneys for Plaintiff
Niagara Bottling, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| Niagara Bottling, LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>Zurich American Insurance Company,<br><br>      Defendant. | Case No.: 5:19-CV-00113<br><br>**COMPLAINT FOR:**<br><br>**1) DECLARATORY JUDGMENT;**<br><br>**2) BREACH OF CONTRACT;**<br><br>**3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>***JURY TRIAL DEMANDED*** |



Plaintiff Niagara Bottling, LLC ("Niagara") alleges, for its complaint against defendant Zurich American Insurance Company ("Zurich"), as follows:

## JURISDICTION AND VENUE

1. Niagara is a limited liability company formed under the laws of Delaware, with its principal place of business located in Ontario, California.

2. Zurich is a corporation incorporated under the laws of New York, with its principal place of business located in Schaumburg, Illinois.

3. This Court has subject matter jurisdiction over this civil action, under 28 U.S.C. section 1332, because Niagara and Zurich are citizens of different states and the amount in controversy, exclusive of costs and interests, exceeds $75,000.

4. Venue is proper in this District, under 28 U.S.C. section 1391, because jurisdiction is based only upon diversity of citizenship, and a substantial part of the events giving rise to this claim occurred in this District.

## GENERAL ALLEGATIONS

5. Niagara is a well-respected and widely-distributed bottled water manufacturer with corporate headquarters in California. Niagara was formed in 1963, and has been a leading innovator in the bottled water and beverage industry.

6. Niagara has been continually recognized by its own industry, and its customers, for developing environmentally friendly and sustainable technologies for the provision of its bottled water products. Niagara is recognized as providing clean, safe, and high-quality water for human consumption.

7. As alleged in more detail below, this lawsuit concerns Zurich's insurance obligations to Niagara for losses arising from a recall involving one of Niagara's suppliers. The recall resulted in the destruction of numerous Niagara bottles and other covered losses, which Zurich has improperly refused to pay based on a series of continually shifting, faulty excuses.



**The Zurich Policy**

8. As part of its comprehensive risk management strategy, Niagara procured and maintained insurance coverage to guard against unanticipated losses and liability. One of the major components of that program is first-party property insurance that would cover losses to it products and other property due to an unanticipated event such as a product recall.

9. At the cost of a substantial premium (almost $600,000), Niagara purchased from defendant Zurich an EDGE Global Policy (the "Zurich Policy" or the "Policy"), which provides broad, first-party coverage for, *inter alia*, loss or damage to covered real or personal property, including all of the Niagara property addressed in this complaint, during the time period of August 6, 2014 to August 6, 2015. (Due to the large size of the policy document, which is over 150 pages, a copy is not being attached to the Complaint. On information and belief, Zurich possesses and maintains its own complete copy of the Policy. A copy of the Policy can be provided to the Court upon request.)

10. The Policy provides comprehensive all-perils property coverage, stating, *inter alia*: "This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property …"[1] The Policy broadly defines the term "Covered Cause of Loss" to mean "All risks of direct physical loss of or damage from any cause unless excluded."

11. Loss or destruction of unsold products is one of the most common and significant property loss risks facing any consumable supplier or manufacturer, like Niagara. Many property policies will contain a recall exclusion that limits such coverage. Such exclusions are common and readily available on standard insurance industry forms. Indeed, Zurich routinely sells policies with recall exclusions when it wants to exclude such losses. Here, Niagara purchased the Zurich Policy *without* any recall exclusion.

---

[1] Terms in boldface are specifically defined in the Policy.



2

COMPLAINT

12. The Zurich Policy coverage limit is $200 million. The fundamental purpose of this coverage is to provide Niagara with broad coverage for and protection against property damage and loss, including many of the exact types of losses at issue.

13. At all relevant times, the required premiums were paid for the Zurich Policy and the Zurich Policy was in full force and effect.

**The Supplier Recall**

14. As a result of its success and expansion, Niagara purchased spring water from local spring water suppliers throughout the country. One such supplier is a company known as Far Away Springs, from which Niagara agreed to purchase water on or about March 1, 2015.

15. On June 18, 2015, however, Niagara was informed that a possible health issue had been detected in a sample from the Far Away Springs water supply. A recall was implemented associated with the Far Away Springs water supply.

16. Niagara immediately placed on hold all of its bottled water products at its facilities that used water from Far Away Springs.

17. Those products were tested, and none of them ever tested positive for any issue. Zurich has agreed that there was no actual issue with the Niagara bottled water products.

18. However, in conjunction with the recall of products involving the Far Away Springs water supply, in an abundance of caution, the government required the physical destruction and disposal of those bottled water products. The result was the direct physical loss of millions of dollars of Niagara's property.

19. As a consequence of the Far Away Springs recall, Niagara also suffered various other losses, including expenses, business interruption, and other consequential economic losses. This complaint will refer to the events alleged in



COMPLAINT

paragraphs 15 thru 19, and all related surrounding events, as the "Far Away Springs Recall".

**<u>Zurich's Repeated Failure To Provide Coverage</u>**

20. Niagara notified Zurich of the Far Away Springs Recall and Niagara's associated losses, and sought coverage for those losses under the Policy.

21. Zurich responded with extensive requests for additional information, all of which was provided by Niagara.

22. As indicated, the Zurich Policy plainly obligates Zurich to provide coverage for many of the losses resulting from the Far Away Springs Recall, including, for example, the loss of product. The Policy even specifically describes how the amount of coverage is calculated for such loss of product, providing that the loss shall be calculated based on the Selling Price of the product (rather than the production cost or another metric). The Policy also provides coverage for various other losses associated with the recall.

23. However, after receiving the requested information, Zurich indicated that it was denying coverage. The stated basis for Zurich's denial was that the Niagara product had been tested and there was no health issue. Therefore, according to Zurich, there was no actual physical loss or damage. (Alternatively, Zurich argued that if there was in fact something wrong with the Niagara product, then a contamination exclusion in the Policy would apply.)

24. Besides ignoring the obvious actual physical loss and destruction of millions of dollars of Niagara's water bottles, Zurich treated the Policy as if it contained a recall exclusion—which it clearly did not. As mentioned, although recall exclusions are common in commercial property policies, Niagara purchased a property policy from Zurich *without* any such exclusion and protected itself against that risk.

25. Niagara retained coverage counsel and responded to Zurich, asking Zurich to reconsider its incorrect analysis. Niagara agreed that its product had not



been contaminated (which also meant the contamination exclusion could not apply), but that was beside the point. Niagara directed Zurich to the correct analysis that the forced destruction of millions of dollars' worth of Niagara's product plainly constituted loss or damage under the Policy, and so Zurich must provide coverage.

26. Nonetheless, Zurich continued to deny coverage, now shifting its focus to an argument that the loss is uninsurable because it allegedly was intentional and self-inflicted, stating that "[t]he voluntary destruction by the insured of non-contaminated product would not constitute a covered fortuitous loss."

27. Niagara persisted. The company provided Zurich with additional proof that the Far Away Springs Recall and the destruction of millions of dollars' worth of Niagara's product was necessary and required by the government. To say that the loss was not fortuitous made no sense. Niagara also reminded Zurich that it sold Niagara a policy *without* a recall exclusion, and that it was improper for Zurich to try to write one into the Policy through these creative coverage defenses.

28. But once more, rather than acknowledge its coverage obligations, Zurich changed tack. Zurich's new focus was to say that an "ordinance or law exclusion" in the Policy bars coverage because the government had required the loss. But that exclusion concerns building code violations, and has no bearing here. Zurich agrees there is no recall exclusion, but again tries to twist other Policy provisions into exactly that.

29. Clearly, Zurich simply decided that it was going to deny coverage no matter what. It was just going through the motions of a purported "investigation".

30. To date, Zurich has failed to acknowledge or confirm any coverage for the Far Away Springs Recall and the losses at issue, and has not provided any coverage payment to Niagara.



31. Having had enough, Niagara has decided that it has no choice but to sue for coverage. Because of Zurich's unreasonableness, Niagara also includes a claim for bad faith.

## FIRST CAUSE OF ACTION
## (Declaratory Relief)

32. Niagara incorporates by reference paragraphs, 1 through 31, inclusive.

33. On information and belief, and based on Zurich's statements, actions, and/or inaction, Zurich disputes its obligations to Niagara under the Policy regarding coverage for Niagara's losses associated with the Far Away Springs Recall.

34. Niagara maintains that Zurich is obligated to provide coverage for the loss and destruction of its products and for the other covered losses associated with the Far Away Springs Recall.

35. Accordingly, a controversy exists as to the interpretation and application of the Policy. A declaration of each party's rights is necessary and proper at this time, as Niagara suffered significant losses for which it wants and needs confirmation of coverage under the Policy.

36. Therefore, Niagara seeks a judicial determination and declaration of its rights and duties under the Policy and, specifically, that Niagara's interpretation of the Policy is correct and that the Policy provides coverage for Niagara's losses.

## SECOND CAUSE OF ACTION
## (Breach of Contract)

37. Niagara incorporates by reference paragraphs, 1 through 36, inclusive.

38. Zurich has a contractual obligation under the Policy to provide confirmation and payment of coverage to Niagara for Niagara's losses associated with the Far Away Springs Recall.

39. All conditions and/or covenants for coverage have been satisfied, or are otherwise rendered inapplicable.



COMPLAINT

1  40. Zurich breached its obligations under the Policy by failing to confirm
2  and pay the required coverage to Niagara.
3  41. As a direct and proximate result of Zurich's breach of its obligations,
4  Niagara sustained a series of substantial unreimbursed losses including, but not
5  limited to, the total sale value of the destroyed product, covered expenses
6  associated with the recall, covered business interruption losses and all other
7  covered losses under the Policy.

## THIRD CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

42. Niagara incorporates by reference paragraphs, 1 through 41, inclusive.

43. Zurich acted unreasonably with respect to its investigation of Niagara's coverage claims under the Policy and its unreasonable coverage positions.

44. Among other things, Zurich failed to properly consider additional information provided by Niagara that rebutted each of Zurich's coverage defenses. Instead, early on, Zurich clearly made up its mind to deny coverage no matter what, and was not moving from that position.

45. Zurich also applied unreasonable interpretations of the Policy that were inconsistent with the applicable and well-known rules governing insurance policy interpretation. Zurich read coverage provisions narrowly in an attempt to avoid coverage. Likewise, Zurich read certain exclusions broadly – and in novel ways inconsistent with the rest of the Policy and inconsistent with common and accepted interpretations – in order to try to deny coverage.

46. Similarly, Zurich contorted the rules of insurance contract interpretation to improperly write a non-existent recall exclusion into the Policy, even though Zurich sold the Policy without any such exclusion. Zurich knows that it offers the same or similar policies with recall exclusions, and yet attempted to



1  treat this policy without the recall exclusion no differently.  Zurich did this in order
2  to avoid meeting its coverage obligations.

3      47.    This pattern of conduct showing that Zurich simply decided to deny
4  coverage no matter what shows that Zurich's bad faith was willful and malicious.

5      48.    By these and other actions and inactions to be proven at trial, Zurich
6  breached the covenant of good faith and fair dealing with respect to the Niagara's
7  claims under the Policy.

8      49.    As a proximate result of Zurich's misconduct. Niagara has been
9  damaged as heretofore alleged, including, but not limited to, attorney's fees and
10 costs to mitigate and remedy Zurich's breach of its coverage obligations under the
11 Policy (including the prosecution of this action).  Niagara also is entitled to recover
12 exemplary damages, both to punish Zurich for its transgressions and to deter
13 Zurich and others from engaging in similar, wrongful conduct in the future.  The
14 full amount of these various damages will be proven at trial.

## PRAYER FOR RELIEF

16 **Wherefore**, plaintiff Niagara prays for judgment as follows:

**On The First Cause of Action:**

18     1.    For the Court to order and declare that Zurich has a duty under the
19 Policy to provide coverage for Niagara's losses in connection with the Far Away
20 Springs Recall;

**On The Second Cause of Action:**

22     2.    For compensatory damages in an amount to be proven at trial;

**On The Third Cause of Action:**

24     3.    For compensatory damages in an amount to be proven at trial,
25 including its attorney's fees incurred in prosecuting the First and Second Causes of
26 Action in this action;

27     4.    For exemplary damages in an amount sufficient to punish and make
28 an example of Zurich;



COMPLAINT

**On All Causes of Action:**

5. For its costs of suit incurred herein;

6. For pre-judgment and post-judgment interest at the maximum legal rate on all sums awarded; and

7. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Niagara Bottling, LLC hereby demands a trial by jury.

Dated: January 18, 2019        Respectfully Submitted,

ABELSON HERRON HALPERN LLP
   Marc D. Halpern
   Vincent H. Herron
   Douglas J. Brown

By /s/ Marc D. Halpern
   Marc D. Halpern
Counsel for Plaintiff
Niagara Bottling, LLC



COMPLAINT

9